UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 3:17-cr-00082-MMD-CLB |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| ANTOINE HARRIS, | |
| Defendant. | |

## I. SUMMARY

Defendant Antoine Harris is serving a 137-month sentence, followed by two five-year terms of supervised release, at the Federal Correctional Institution at Victorville Medium I ("FCI Victorville") for one count of possession with intent to distribute 5 grams or more of methamphetamine and one count of possession of a firearm in furtherance of a drug trafficking crime. (ECF No. 152 at 1-3.) Before the Court is Harris' motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic as applied to his health and particular circumstances.[1] (ECF No. 153 (the "Motion").) When the Court imposed his sentence nine months ago, it was fully apprised of Harris' health conditions as well as the risk of COVID-19 exposure to immunocompromised persons. And Harris has not presented evidence in his Motion that he is now at a greater risk of contracting a severe case of COVID-19 than he was when the Court sentenced him. Additionally, Harris chose

---

[1]The government opposes his release. (ECF No. 155.) The government also filed an unredacted set of Harris' medical records along with a motion to seal concurrently with its response. (ECF Nos. 156, 157.) The Court finds that Harris' medical records should remain under seal as they contain confidential information about Harris, including Harris' health information and information about his medications. The Court will therefore grant the government's motion to seal. (ECF No. 156.)

to decline full COVID-19 immunization, a choice that does not constitute an "extraordinary and compelling reason" for his release. Therefore, and as further explained below, the Court will deny Harris' Motion.

## II. BACKGROUND

Harris pled guilty to one count of possession with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(B)(viii) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 921(c)(1)(A)(i). (ECF No. 152 at 1.) More specifically, Harris admitted he knowingly possessed 5 grams or more of actual methamphetamine with the intent to distribute it to other people. (ECF No. 131 at 7.) In addition, Harris "possessed a High Point .380 caliber pistol bearing serial number P1973672 in furtherance of his possession of the methamphetamine[.]" (*Id.*) On September 14, 2020, the Court sentenced him to 137 months in prison, followed by two five-year terms of supervised release to be served concurrently. (ECF No. 152 at 2-3.) At the time he filed his Motion, Harris had served 43 months of his 137-month sentence, or about a third. (ECF No. 155 at 3.)

As noted, Harris seeks release because his preexisting medical conditions make him particularly vulnerable to COVID-19. (ECF No. 153 at 1.) Harris is a 45-year-old Black male with multiple sclerosis ("MS").[2] (*Id.*) Further, the medication he takes to treat his MS reduces the immune response triggered by live vaccinations. (ECF No. 155 at 6-7.) Harris received one dose of the Moderna COVID-19 vaccine, which is not a live vaccine, on March 10, 2021. (*Id.* at 6.) He refused the second dose due to becoming ill after the first shot. (*Id.*) He also tested positive for COVID-19 in October 2020. (ECF No. 153 at 2.)

## III. LEGAL STANDARD

Harris specifically seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA") of 2018. (ECF No. 153 at 1.) This provision offers Harris a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18

---

[2] These conditions existed at the time of sentencing. (ECF No. 145 at 5.)

U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it). "It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the [Bureau of Prisons ("BOP")] to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *U.S. v. Mogavero*, Case No. 2:15-cr-74-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).[3] Moreover, before granting such a request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

**IV.    DISCUSSION**

The Court follows a three-step process to evaluate the Motion. First, the Court determines if Harris has satisfied the statutory prerequisites under Section 3582(c)(1)(A). Then, the Court evaluates whether Harris has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i). Finally, the Court addresses the applicable policy statements and sentencing factors under Section 3582(c)(1)(A). Here, as there is no dispute regarding the first step, the Court will primarily address the latter two steps. Ultimately, the Court does not find extraordinary and compelling reasons exist to grant Harris' Motion.

**A. Statutory Prerequisites**

Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for compassionate release on the defendant's behalf before filing such a motion with a court, normally done by submitting a request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A). In addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

---

[3] The Court reads § 3582(c) as granting the Court broad authority to modify and reduce a sentence upon a showing of 'extraordinary and compelling reasons.' *See* 18 U.S.C. § 3582(c).

receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*

Harris represents he has satisfied the statutory prerequisites because he submitted a request for compassionate release to the warden on October 29, 2020, and more than 30 days later, the warden has not responded. (ECF No. 153 at 6.) The government does not dispute that Harris has satisfied the statutory prerequisites. The Court accordingly finds it has jurisdiction over Harris' request, and will move on to the other two steps of the analysis.

### B. Extraordinary and Compelling Reasons

To prevail on the "extraordinary and compelling reasons" prong of the analysis, Harris must establish: (1) the combination of his age and underlying health conditions elevates his risk of becoming seriously ill were he to contract COVID-19 (the "Underlying Health Conditions Prong"); and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released (the "Location Prong"). *See, e.g.*, *U.S. v. Kauwe,* 467 F. Supp. 3d 940, 942-43 (D. Nev. June 3, 2020).

#### i. Underlying Health Conditions Prong

The parties agree that Harris' MS places him at a higher risk of COVID-19 complications. (ECF Nos. 153, 155.) Harris instead argues that his MS makes him more likely to develop severe complications if he is re-infected with COVID-19, despite having received one dose of the Moderna vaccine. (ECF No. 153 at 2-3, 10-11.) The government counters that Harris chose not to receive the second dose of the Moderna vaccine, and thus does not show "extraordinary and compelling reasons" for release. (ECF No. 155 at 4, 6.) The Court agrees with the government.

Although Harris may be medically justified in refusing his second Moderna COVID-19 vaccination, he ultimately did choose to decline full immunization. Harris reported becoming "violently sick" for three days after receiving the first shot. (ECF No. 153 at 3.) But the Court cannot say this is atypical—the side effects of the Moderna vaccine include fever, nausea, and vomiting. (ECF No. 155 at 8.) In addition, when he received his vaccine

shot, Harris was concurrently taking Gilenya for his MS. (*Id.* at 6.) And, indeed, Gilenya's drug warnings advise: "Avoid the use of live attenuated vaccines during and for 2 months after treatment with GILENYA because of the risk of infection." Novartis, *Highlights of Prescribing Information* (last accessed June 3, 2021), https://www.novartis.us/sites/www.novartis.us/files/gilenya.pdf. But the Moderna vaccine is an mRNA vaccine; it "do[es] not use the live virus that causes COVID-19." CDC, *Understanding mRNA COVID-19 Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mRNA.html (last accessed June 2, 2021). Thus, Harris' concerns about receiving the second COVID-19 shot are not necessarily justified. That said, Gilenya's warnings do not mention mRNA vaccines—a relatively new technology—which, contrary to the government's assertion, does not mean Gilenya will not have a negative interaction with a mRNA COVID-19 vaccine. (ECF No. 155 at 7.) Given the emergent nature of mRNA vaccines, this Court does not assume that mRNA vaccines are safe to receive while taking Gilenya. In sum, it was not entirely unreasonable for Harris to refuse the second Moderna shot.

However, the refusal does cut against Harris' reinfection argument. If Harris' primary concern is with COVID-19 complications, he had the opportunity (and may still) to avail himself of the full protection of the Moderna vaccine. Additionally, one shot of the Moderna vaccine still likely confers some amount of immunity to Harris. He is now presumably more protected from COVID-19 than he was at sentencing in September 2020, prior to vaccine availability. Further, the administration of the vaccine to staff and inmates at FCI Victorville since sentencing has logically reduced the overall COVID-19 exposure level to Harris. Therefore, since Harris likely has more immunity to COVID-19 than at sentencing, and because he voluntarily declined full immunization, the Court does not find "extraordinary and compelling reasons" for his release.

Moreover, given that Harris already contracted COVID-19 in October 2020, his concerns regarding severe complications upon reinfection are unpersuasive. While his MS likely puts Harris at higher risk than a healthy person should he become reinfected

with COVID-19—especially since he is not fully vaccinated—he did not report becoming severely ill from COVID-19 when he contracted it in October 2020. (ECF Nos. 153 at 2, 155 at 6.) Since that date, Harris has received one dose of the Moderna vaccine, further increasing his protection from severe illness. Finally, as discussed below, the number of currently reported COVID-19 cases at FCI Victorville is negligible. Therefore, even if the Court were to assume that Harris has satisfied the "Underlying Health Conditions Prong," he has not established the "Location Prong" of the "extraordinary and compelling reasons" analysis.

### ii. Location Prong

The Location Prong requires that Harris face greater risk from COVID-19 if he continues to be housed at his current facility instead of being released. *See Kauwe*, 467 F. Supp. 3d at 943. Currently, the BOP reports no active cases of COVID-19 at FCI Victorville. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (by scrolling to COVID-19 cases, then clicking 'Full breakdown and additional details…', and then scrolling to Victorville Medium I). Even if the Court assumes some underreporting from the BOP, the data tends to indicate that there is not currently an active outbreak at the facility, and Harris has not offered any contrary evidence. As of June 4, 2021, the BOP reports that 398 staff and 1887 inmates have been fully vaccinated at the Victorville Federal Correctional Complex, which is comprised of three facilities including FCI Victorville. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (by scrolling to COVID-19 Vaccine Implementation, then clicking 'Learn more about vaccinations and view individual facility stats', and then scrolling to Victorville FCC). Based on these figures, the Court calculates roughly 50% of inmates at Victorville FCC have been fully vaccinated. This is a comparable rate to the 52.3% of American adults who have been fully vaccinated as of June 4, 2021. *See* CDC, *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last accessed June 4, 2021). The Court thus finds that Harris has not established that he faces greater risk within the facility

than without. Therefore, the balance of the "extraordinary and compelling reasons" analysis does not weigh in Harris' favor.

**C. Section 3553(a) Factors**

The Court must next consider the factors set forth in Section 3553(a) to the extent they are applicable. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission;[4] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7). As to the Section 3553(a)(2) factors, the need for a sentence must be sufficient, but not greater than necessary, to serve the purpose of "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citation and internal quotation marks omitted).

Harris does not address the Section 3553(a) factors in his Motion at length. He simply asserts that his MS diagnosis in 2018 has changed his views on life and if released, he would not pose a danger to the public. (ECF No. 153 at 4.) The government counters that the Section 3553(a) factors weigh against granting the Motion because the Court evaluated the same factors at sentencing nine months ago, with no significant changes in circumstances since then. (ECF No. 155 at 14.) The Court again agrees with the government.

The Court examined the Section 3553(a) factors in September of 2020 when the COVID-19 pandemic was in full swing. The Court incorporates by reference its discussion of the sentencing factors from the sentencing hearing. (ECF No. 151.) That discussion

---

[4]Because the Sentencing Commission never released guidelines with respect to compassionate release under the FSA, Section 3553(a)(5)'s pertinent policy statement factor is neutral. *See U.S. v. Regas*, Case No. 3:91-cr-57-MMD-NA-1, 2020 WL 2926457, at *4 n.7 (D. Nev. June 3, 2020) (citation omitted).

continues to apply to Harris' circumstances today. Indeed, the most significant change in circumstances since the Court sentenced Harris weighs against granting Harris' Motion—the availability and administration of an effective COVID-19 vaccine. Harris has received one dose of the vaccine, and many inmates and staff are fully vaccinated at this point. These facts point towards lower susceptibility to serious COVID-19 complications for Harris than he faced at sentencing. And the Court finds no other change in circumstances relevant to the Section 3553(a) factors since that date. Therefore, the sentencing factors do not weigh in favor of Harris' release.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Harris' motion for compassionate release (ECF No. 153) is denied.

It is further ordered that the government's motion to seal (ECF No. 156) is granted.

DATED THIS 8TH Day of June 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE